**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAMILTON ISMAEL PADILLA MENDOZA,<br><br>          Petitioner,<br>     v.<br><br>FERETI SEMAIA, et al.<br><br>          Respondents. | No. 5:26-cv-3131 DSR<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, ORDERING IMMEDIATE RELEASE OF PETITIONER, AND ENJOINING REMOVAL TO THIRD COUNTRY WITHOUT NOTICE AND AN OPPORTUNITY TO BE HEARD** |

**1.    INTRODUCTION**

The above-captioned matter is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 by a detainee presently held in Respondents' custody at the Immigration and Customs Enforcement ("ICE") detention facility in Adelanto, California.  All parties have consented to have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of judgment.  See Doc. No. 2, General Order 26-05 at Ex. "A" (Doc. No. 4), and Doc. No. 7.  For the reasons discussed below, the Court GRANTS the Petition for Writ of Habeas Corpus, orders Petitioner's immediate release from custody, and enjoins Respondents from removing Petitioner to a third country, but only to the extent of requiring they first provide him and his counsel with notice and a meaningful opportunity to respond in reopened removal proceedings in compliance with the applicable statutory law

and due process.  The Court also dissolves the Temporary Restraining Order entered June 13, 2026.

**2.      BACKGROUND**

    **A.      Factual Background**

Petitioner Hamilton Ismael Padilla Mendoza is a native and citizen of Nicaragua who is presently held in immigration detention at the ICE Processing Center in Adelanto, California.  See Pet. (Doc. No. 1) at ¶ 18.  Respondents are the Warden of the Adelanto ICE Processing Center, the Field Office Director for ICE's Enforcement and Removal Operations ("ERO") Los Angeles Field Office, the Acting Director of ICE, the Secretary of the Department of Homeland Security, and the Acting Attorney General of the United States, each in his or her official capacity.  Id. at ¶¶ 13-17.

According to the verified Petition, Petitioner last entered the United States on or about May 5, 2022, and was detained, presumably by border patrol or immigration agents.  Id. at ¶ 19.  On May 6, 2022, he was released on parole under Section 212(d)(5) of the Immigration and Nationality Act ("INA").  Id.  Removal proceedings were subsequently initiated against him in August 2022.  Id. at ¶ 20.  While the removal case proceeded, he was released on his own recognizance.  Id.

On October 10, 2024, the Immigration Judge denied Petitioner's claim for asylum, ordered him removed to his native Nicaragua, but also granted his request for withholding of removal to Nicaragua under INA § 241(b)(3).  Id. at ¶ 22; Pet. at Ex. "A" (Doc. No. 1-1) at ECF pp. 7-10.  No alternative country of removal is specified in that Order.  Id. at Ex. "A," ECF p. 9.  Both sides waived appeal of that Order.  Id. at ECF p. 10.  Petitioner was therefore allowed to remain in the United States, subject to compliance with various supervision requirements, all of which he complied with.  Pet. at ¶¶ 22-24.

On February 2, 2026, Petitioner was directed to report to the Intensive Supervision Appearance Program ("ISAP"), where he was enrolled in the BI

SmartLINK mobile application.  Id. at ¶ 23.  That application required weekly check in.  Id.  He fully complied with the requirements of that program.  Id. at ¶ 24.

On June 4, 2026, while attending a routine ICE check-in, Petitioner was "unexpectedly arrested and taken into custody without prior notice.  The arresting officer provided no meaningful explanation, stating only that he couldn't send [Petitioner] back to his country but that they would look for another country to take him to."  Id. at ¶ 25.  ICE did not provide Petitioner with written notice explaining the basis for revocation of his supervised release, nor did it provide him an initial interview pursuant to 8 C.F.R. §§ 241.41(l)(1) and 241.13(i)(3).  Id. at ¶ 26.  Petitioner was subsequently transferred to the Adelanto ICE Processing Center, where he remains in detention.  Id.

Respondents have not contested any of these facts in their Answer.  They highlight, however, that Petitioner has a misdemeanor conviction for driving under the influence in December 2023, for which he was sentenced to 36 months' probation.  See Answer (Doc. No. 11) at ECF p. 2, ln. 3; Doc. No. 11-1 at ECF p. 3.[1]  Petitioner admits the conviction in his Petition.  Pet. at ¶ 27.  Respondents also attach to their Answer a Notice dated June 11, 2026, informing Petitioner that ICE intends to remove him to Mexico.  See Doc. No. 11-3.

**B.** **Procedural History**

Petitioner filed this habeas case on June 8, 2026.  See Doc. No. 1.  That day, the Clerk of Court served the Petition on Respondents, along with a Notice of General Order 26-05.  See Doc. No. 4.  That Notice and General Order set an expedited briefing schedule on the Petition and ordered that during the pendency of this case, "the government shall provide at least two court days' notice to the

---

[1]  Respondents state in their Answer that Petitioner has a "serious criminal history including driving under the influence."  Answer at ECF p. 2, ln. 3 (emphasis added).  The evidence they provide in support, however, shows only a single item under criminal history – the above-noted misdemeanor DUI.  See Doc. No. 11-1 at ECF p. 3.

petition, his or her counsel, and the Court of its intent to remove the petitioner from the Central District of California."  General Order 26-05 at § 6.  Pursuant to that latter requirement, on June 11th, before they filed any substantive response to the Petition (which was not due until June 15th), Respondents filed a Notice of Intended Removal, stating that they planned to remove Petitioner from the United States on June 18th.  See Doc. No. 5.  Respondents did not identify in that Notice to where they intended to remove Petitioner.  Id.

On June 12th, Petitioner filed an Ex Parte Application for Temporary Restraining Order, seeking both to block such removal and an order compelling Petitioner's immediate release.  See Doc. No. 6.  On June 13th, the Court granted, in part, Petitioner's Ex Parte Application under the All Writs Act for the purpose of preserving the Court's jurisdiction, and temporarily restrained Petitioner's removal or transfer out of this judicial district in order to preserve the Court's ability to hear this case on the merits after full briefing.  See Doc No. 8.

Respondents filed their Answer to the Petition on June 16, 2026.  See Doc. No. 11.  Petitioner filed his Reply on June 17, 2026.  See Doc. No. 12.[2]  The matter was then taken under submission for decision.  See General Order 26-05 at p. 3.

**3.     LEGAL STANDARD**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'"  Martinez

---

[2]     The Court notes Petitioner's objection to Respondents' Answer on the ground that the Answer was filed a day late.  See Reply (Doc. No. 12) at 2.  In the interest of a complete hearing on the merits of this dispute, the Court declines Petitioner's request to disregard Respondents' untimely Answer and consider his Petition unopposed.  In its analysis, the Court has fully considered Respondents' Answer, despite its untimeliness.

v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024).  Petitioner makes such reviewable claims here.

**4.      PETITIONERS' CLAIMS FOR RELIEF**

Petitioner raises a number of claims for relief in his Petition: (1) his current detention is unlawful under Zadvydas v. Davis, 533 U.S. 678 (2001) because there is no significant likelihood of his removal in the reasonably foreseeable future in light of the Immigration Judge's granting his request for withholding of removal to Nicaragua, (2) his current detention violates his substantive due process rights because it is "untethered to any legitimate government interest," (3) his current detention violates his procedural due process rights because Respondents failed to comply with the laws applicable to revocation of supervised release, (4) prospective removal to a third country without meaningful notice and an opportunity to respond and make a fear-based claim violates due process, and (5) removing Petitioner to a third country based on his prior conviction would constitute punitive banishment in violation of the Fifth and Eighth Amendments. See Pet. at ¶¶ 66-98.

Petitioner seeks a writ from this Court commanding his immediate release subject to the same conditions of supervision applicable prior to his June 4th arrest, an order that Respondents may not re-detain him absent a violation of those conditions shown at a pre-deprivation hearing in compliance with applicable statutory and regulatory requirements, an order that Respondents not remove him to a third country without notice and a meaningful opportunity to respond in compliance with applicable statutory and constitutional requirements, and an order prohibiting removal to a third country "because Respondents' third country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm."  Id. at p. 25.

5.    **DISCUSSION**

A.    **Respondents' Revocation of Petitioner's Supervised Release and Resulting Detention of Him Violates Procedural Due Process**

The record in this case is clear that Petitioner is subject to a final order of removal.  See Pet. at ¶ 22, Ex. "A;" see also Answer at ECF. p. 2, ln. 2.  The issue with regard to the lawfulness of Petitioner's current detention is whether Respondents violated the applicable regulations and Petitioner's due process rights when they revoked his supervised release and re-detained him at his ICE check-in on June 4, 2026.

The provisions of 8 U.S.C. § 1231(a) govern the detention, release, and removal of noncitizens – like Petitioner – subject to a final order of removal.  Such individuals are subject to a 90-day detention period while removal is pursued.  8 U.S.C. § 1231(a)(1).  If the noncitizen is not removed during this 90-day period, however, he or she is "subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  The noncitizen may be detained beyond the 90-day removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6).

That appears to be what happened here – Petitioner's 90-day detention period following his October 2024 removal order expired long ago and Petitioner was therefore on supervised release when he went to his ICE check-in on June 4, 2026.  See Pet. at ¶¶ 22-24.  His arrest and re-detention that day was therefore a de facto revocation of that supervised release.  Petitioner claims here that such revocation violated this due process rights and the Administrative Procedures Act because it did not comply even with Respondents' own applicable regulations governing the procedural steps required for such revocation.  Id. at ¶¶ 81-87.  On the record before this Court, Petitioner is correct.

Revocation of the supervised release status of a non-citizen subject to a final order of removal is governed by 8 C.F.R. § 241.4(l).  That regulation

6

requires that an alien previously released under an order of supervision who is returned to custody for alleged violation of that order "be notified of the reasons for revocation" "[u]pon revocation."  The regulation also requires that the alien "will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  If re-release does not occur following the informal interview, the alien must receive notification of a "records review and scheduling of an interview" "which will ordinarily be expected to occur within approximately three months after release is revoked."

Zhang Haixiang v. Dep't of Homeland Sec., No. ED CV 25-1890-JLS(E), 2025 WL 3683126, at *3 (C.D. Cal. Dec. 2, 2025), report and recommendation adopted sub nom. Zhang v. Dep't of Homeland Sec., No. ED CV 25-1890-JLS(E), 2025 WL 3679184 (C.D. Cal. Dec. 18, 2025).

On the record before the Court, Respondents did not comply with any of those requirements, even assuming there was some substantive ground – some change in conditions – that justified the revocation of Petitioner's supervised release that day.  Petitioner was not notified of the reason for the revocation of his order of supervision "upon revocation."  All he was apparently told was that immigration authorities "couldn't send him back to his country but that they would look for another country to take him to."  Pet. at ¶ 25.  Nor is there any indication that Petitioner was afforded any "initial informal interview" promptly after his re-detention to afford him an opportunity to respond to the reasons for revocation that were not stated in the non-existent notice.  Id. at ¶ 26.  Of course, since neither of those required procedures – the notice nor the initial informal interview

– occurred, Petitioner also did not receive the required notification of a "records review and scheduling of an interview."

In their Answer, Respondents address only Petitioner's Zadvydas claim of unconstitutional indefinite detention and his attack on third-country removal. See Doc. No. 11 at ECF p. 2. They fail even to respond to this procedural due process claim. They offer no facts showing that they complied with their own procedural requirements, nor any argument that those procedural requirements somehow do not apply here.

On this record, the revocation of Petitioner's supervised release and resulting detention on June 4th was unlawful and warrants the issuance of habeas relief in the form of Petitioner's immediate release from custody and restoration of the same conditions of supervised release he was subject to prior to the defective revocation on June 4, 2026. See Zhang Haiziang, 2025 WL 3685726, at *3; Ghafouri v. Noem, No. 3:25-CV-02675-RBM-BLM, 2025 WL 3085726, at *6 (S.D. Cal. Nov. 4, 2025) (noting "District courts across the country, including in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered'" and collecting cases).

"Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's supervised release under the conditions applicable before the unlawful revocation of that release on June 4th. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id. "Providing Petitioner an interview ex post facto,

8

while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.  The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.  Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025).  Accordingly, the Court orders Respondents to release Petitioner immediately.

The Court further determines that the record supports Petitioner's request for an order that Respondents not re-detain him absent compliance with the applicable procedural requirements for revocation of supervised release.  See Pet. at p. 25, prayer ¶ c.  Like the rest of Petitioner's procedural due process claim, Respondents did not dispute – or even address – this request in their Answer.  Habeas relief is not limited to "discharge of the applicant from physical custody.  Its mandate is broad with respect to the relief that may be granted."  Carafas v. LaVallee, 391 U.S. 234, 239 (1968).  Title 28 U.S.C. § 2243 expressly provides that "[t]he court shall . . . dispose of the matter as law and justice require."  Even after his return to supervised release as ordered here, Petitioner will remain subject to the final order of removal, and Respondents will likely continue trying to enforce that order.  The Court finds that law and justice require a specific injunction to prohibit reoccurrence of the same violation of Petitioner's rights that occurred here as Respondents continue their efforts to remove Petitioner.

A permanent injunction may be entered, at the discretion of the District Court, where a petitioner shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006).  The Court finds Petitioner has made such a showing here when it comes to revocation of his supervised release

and re-detention without adequate process.  He has suffered an irreparable injury by being held in detention for weeks following the defective revocation of his supervised release, and would again if Respondents repeat such conduct.  Legal remedies such as damages would be inadequate to cure the unconstitutional loss of his liberty.  And the balance of hardships and public interest between on the one side merely requiring Respondents to provide basic due process – to follow their own regulations – in the event they again seek to revoke his supervised release, and on the other side forcing Petitioner again to suffer detention and sue to win his release, tips strongly in Petitioner's favor.

Therefore, the Petition for Writ of Habeas Corpus is GRANTED on Petitioner's procedural due process claim, and Respondents are ordered to release Petitioner immediately.  In light of that order, it is unnecessary to determine Petitioner's alternative claims of a substantive due process violation or indefinite detention under <u>Zadvydas</u>.

**B.      An Injunction Blocking Petitioner's Removal to a Third Country Without Notice and an Opportunity to be Heard is Appropriate**

In addition to challenging his current detention and seeking immediate release, Petitioner also challenges what was – at least at the time he filed his Petition – the prospect of removal to a third country.  That prospect changed from hypothetical to concrete three days after Petitioner initiated this case when Respondents filed their Notice of Intended Removal (Doc. No. 5) and informed Petitioner that their intent was to remove him to Mexico.

When a noncitizen is ordered removed from the United States, an immigration judge must identify a removal country or alternative countries to which the noncitizen must be removed.  See <u>Hadera v. Gonzales</u>, 494 F.3d 1154, 1156 (9th Cir. 2007); 8 C.F.R. § 1240.12(d).  If the Government is unable to remove the noncitizen to the designated country, the Government retains authority to remove the noncitizen "to any other country as permitted by section 241(b) of the

10

[INA]."  8 C.F.R. § 1240.12(d).  The Government may not, however, remove a noncitizen to any country if his or her "life or freedom would be threatened in that country because of [his or her] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A); see also Najjar v. Lunch, 630 Fed. Appx. 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.").

The Immigration Judge ordered Petitioner removed to Nicaragua but also granted withholding of removal there.  See Pet. Ex. "A."  That Order does not designate or identify any alternative country.  Id.  Petitioner challenges the government's ability to remove him to an unspecified third country without first providing notice and an opportunity to make a fear-based claim against removal there.  See Pet. at ¶¶ 89-90.

In their Answer, Respondents argue that habeas relief on this issue is unnecessary because

> without the need for intervention from this Court, Petitioner can claim reasonable fear as to a third country and will be provided with a reasonable fear interview before an asylum officer, and if Petitioner disagrees with an asylum officer's potential negative reasonable fear determination, the regulations provide for a specific remedy: review before an Immigration Judge.

Answer at ECF p. 2, lns. 18-22 (citing 8 C.F.R. § 208.31(g), and emphasizing in italics, bold and underling that a negative reasonable-fear determination is subject to review by an Immigration Judge "upon the [noncitizen's] request.").

That does not preclude habeas review, however.  "Numerous courts within this Circuit have found habeas proceedings to be a proper vehicle for challenges to

third country removal."  Jimenez v. Mullin, No. EDCV 26-356-AGR, 2026 WL 1455385, at *8 (C.D. Cal. May 18, 2026) (collecting cases).  Moreover, "District courts have placed the burden on the government to move to reopen [an immigration case] so that Petitioner is afforded the opportunity to apply for protection from removal under" the Convention Against Torture ("CAT").  Id. (collecting cases) (emphasis added).  The Court notes that Petitioner's application for protection under CAT was not decided and instead "HELD IN ABEYANCE" by the Immigration Judge "in light of the Court's GRANT of Withholding of Removal."  See Pet. at Ex. "A," § 2.E (Doc. No. 1-1 at ECF p. 8).  Therefore, and because the Immigration Judge also did not specify in her Order any third country to which Petitioner could be removed, Petitioner has never had the opportunity to present a fear-based claim as to any third country.  "To comply with due process, this opportunity must include 'a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim.'"  Jimenez, 2026 WL 1455385, at * 9 (quoting Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)).

Accordingly, the Court finds it appropriate, as have other Courts in this District, to enjoin Respondents from removing Petitioner to any third country without first providing him and his counsel with notice and a meaningful opportunity to respond in reopened removal proceedings in compliance with due process and the applicable statutory law.  See Jimenez, 2026 WL 1455385, at *9; Juarez v. Noem, No. 5:26-cv-0014 MWC (KS), 2026 WL 127607, at *5 (C.D. Cal. Jan. 9, 2026) (holding that "[b]eyond the pendency of these proceedings, Petitioner remains entitled to notice and the opportunity to be heard regarding fear of torture in a third country," and the "District Court's authority to enjoin the government from taking actions not authorized by any regulation or statute—or in contravention thereof—is well-recognized.").

To the extent, however, that Petitioner means to claim via his fifth claim for relief that his removal to a third country would be unlawful, <u>regardless</u> of the process provided to him to challenge it, because such removal would constitute unconstitutional punishment and banishment based on a crime (the DUI) for which he has already served his sentence, the Court rejects such a claim on this record. The prospect Petitioner faces of removal to a third country is based on the Immigration Judge's finding that Petitioner is removable – not because he has a DUI conviction.  Petitioner does not, and likely cannot, challenge that order of removal in this Court.  Thus, the Court rejects Petitioner's challenge to third-country removal <u>per se</u>, and limits its ruling as to third-country removal only to requiring adequate procedural safeguards to ensure that Petitioner will be heard (following adequate notice) on whatever fear-based challenge he may wish to raise to his removal to a country other than his native Nicaragua.

**6.      THE JUNE 13, 2026, TEMPORARY RESTRAINING ORDER IS DISCHARGED**

The June 13, 2026, Temporary Restraining Order in this case was entered pursuant to the Court's authority under the All Writs Act solely to preserve the Court's jurisdiction to hear Petitioner's claims on their merits, after full briefing of the parties.  That briefing was completed, and the Court has now decided the case on its merits.  The TRO, having served its limited purpose, is now DISCHARGED.

**7.      CONCLUSION**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241 compelling his immediate release. Moreover, the Court further finds that habeas relief is available, and appropriate in this circumstance, to assure that Petitioner receives adequate procedural protections to which he is entitled by the Constitution, applicable statutes and applicable regulations, before he is removed to any third country.

13

IT IS THEREFORE ORDERED that:

1.  The Petition for Writ of Habeas Corpus is GRANTED.

2.  Respondents shall immediately release Petitioner **Hamilton Ismael Padilla Mendoza (A-240-761-232)** from custody and reinstate his supervised release under the same conditions that were in place before his re-detention on June 4, 2026.

3.  Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.

4.  Within three days of the date of this Order, Respondents shall file a Notice of Release confirming Petitioner's release.

5.  Respondents shall not re-detain Petitioner absent compliance with the applicable law, including constitutional provisions, statutory law, case law, and applicable regulations governing revocation of his supervised release.

6.  Respondents are ENJOINED from removing Petitioner to a third country without first providing him and his counsel with notice and a meaningful opportunity to respond in reopened removal proceedings in compliance with due process and the applicable statutory law.

7.  The Temporary Restraining Order entered June 13, 2026, is hereby DISCHARGED.

**IT IS SO ORDERED.**  The Court will enter Judgment consistent with this Order on a separate form.

DATED: June 24, 2026                    _____
                                        HON. DANIEL S. ROBERTS
                                        UNITED STATES MAGISTRATE JUDGE

14